[Doc. Nos. 44, 49]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOHN BUTTERLY, et al., : | |
| Plaintiffs, : | Civil No. 03-3352 (JEI) |
| v. : | |
| TAMERLANE CAMPGROUND, INC., : et al., | |
| : | |
| Defendants. : | |
| : | |

**OPINION AND ORDER**

      This matter is before the Court on the request of plaintiff's counsel, John J. O'Rourke, Jr., Esquire, for an increase in attorney's fees pursuant to N.J.R. 1:21-7(f). All parties executed a written consent to the jurisdiction of this Court to decide Mr. O'Rourke's application pursuant 28 U.S.C. §636(c). On March 26, 2007, Mr. O'Rourke filed a "Motion For an Increase in Attorney's Fees Per N.J.R. 1:21-7(f)". [Doc. No. 44]. On April 24, 2007, Mr. O'Rourke filed his "Supplemental Motion ... for an Increase in Attorney's Fees Per N.J.R. 1:21-7(f)."  [Doc. No. 49]. On May 14, 2007, this Court denied Mr. O'Rourke's Motion, "without prejudice to plaintiff's right to re-file his Motion upon receipt of the new relevant information the Court asked to be submitted for consideration." See May 14, 2007 Order [Doc. No. 53]. On June 1, 2007, plaintiff filed his "Amended Motion under N.J.R. 4:4-3 to Approve Settlement for a Minor." [Doc. No. 55].

The Amended Motion addressed, in part, Mr. O'Rourke's claim for attorney's fees. In addition to these written submissions, on June 5, 2007, this Court heard the sworn testimony of Mr. O'Rourke's co-counsel, Thomas J. Vesper, Esquire, supporting Mr. O'Rourke's application for attorney's fees.

Background

The original complaint in this case was filed on July 14, 2003. [Doc. No. 1] The only remaining plaintiff is John Butterly ("Butterly"), a minor, by Samuel J. Kitchen, his Guardian.[1] This action arises out of an accident which occurred on July 18, 1996. On that date Butterly was injured when an unsecured newspaper vending machine fell from an elevated platform onto his head while his family was vacationing at Tamerlane Campground ("Tamerlane"). Defendant South Jersey Publishing Co. ("South Jersey") supplied the vending machine that fell on Butterly. The vending machine fell while Butterly was playing on it. The essence of Butterly's liability argument was that it was foreseeable that young children would play on the vending machine and therefore it should have been secured to prevent it from falling. Both defendants contested liability.

As a result of his accident Butterly suffered head injuries including, "a left frontal open depressed skull fracture and dural laceration ..., a left frontal lobe brain contusion and

---

1. Butterly's parents, Matthew and Marion, asserted causes of action on their own behalf in the original complaint. On June 21, 2004, the Honorable Joseph E. Irenas, S.U.S.D.J., entered an Order dismissing with prejudice all claims of Matthew Butterly, Marion Butterly and Jacob Samuel Butterly, a minor by Kristy Oberman, his guardian. [Doc. No. 18].

2

two deep lacerations on his forehead." See Motion at Doc. No. 44, ¶5. Butterly claimed that his accident caused "attention deficit disorder and cognitive difficulties including expressive language difficulties as a result of his injuries from the accident." Id. at ¶7. The parties do not dispute that Butterly suffered seizures after his accident and he is currently taking anti-seizure medication. However, the parties differed as to whether the seizures were caused by Butterly's 2001 accident. Plaintiff produced expert reports opining that Butterly's seizures were caused by his accident. In January of 2007, the parties reached a global settlement in the amount of $2.2 million. In an Order entered contemporaneously with this Opinion and Order, the Court approved the settlement and the manner in which plaintiff proposed to distribute the settlement funds.

On February 4, 2002, Mr. O'Rourke and his firm entered into a "Fee Agreement" with Butterly's parents. See Motion, Doc. No. 44, Exhibit F. The Fee Agreement provided that "[i]n consideration of the services rendered and to be rendered, it is agreed that Lawyer [John O'Rourke, Jr., Esquire] shall deduct and retain 33 [and] 1/3 percent from the gross settlement and/or verdict for his fees." However, after this lawsuit was filed in New Jersey plaintiff's counsel recognized that a New Jersey contingency fee agreement must be signed. Id. at Exhibit G. The executed "Contingent Fee Agreement and Limited Power of Attorney from New Jersey" set forth the statutory limit on contingent fees set forth in N.J.R. 1:21-7(c), which provides as follows:

3

> In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, ..., an attorney shall not contract for, charge or collect a contingent fee in excess of the following limits:
>
> (1) 33 1/3% on the first $500,000 recovered;
> (2) 30 % on the next $500,000 recovered;
> (3) 25 % on the next $500,000 recovered;
> (4) 20 % on the next $500,000 recovered;
> (5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and
> (6) where the amount recovered is for the benefit of a client who was a minor ..., the foregoing limits shall apply except that the fee on any amount recovered by settlement without trial shall not exceed 25%.

Since plaintiff settled for an amount in excess of $2 million, Mr. O'Rourke applied for a reasonable fee pursuant to N.J.R. 1:21-7(g). Furthermore, Mr. O'Rourke also applied for an increase in attorney's fees pursuant to 1:21-7(f) which provides as follows:

> If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made ... for the hearing and determining of a reasonable fee in light of all the circumstances.[2]

Mr. O'Rourke's Motion requests an attorney's fee of 30% on the net settlement amount.[3]

---

2. As set forth in the Order Approving the Minor's Settlement this is a structured settlement also involving an annuity. Pursuant to N.J.R. 1:21-7(h), the basis for calculation of a contingent fee shall be the value of the structured settlement. The value is the cash payment made upon consummation of the settlement plus the actual cost to the party making the settlement of the deferred payment aspects thereof.

3. Mr. O'Rourke is paying plaintiff's New Jersey counsel, Thomas Vesper, Esquire, $50,000 from the total attorney fee and not as a separate charge to plaintiff. <u>See</u> Motion, Doc. No. 44 at ¶98.

4

In considering a fee request under R. 1:21-7(f), a court must make a reasonable fee determination in light of all relevant circumstances. Ehrlich v. Kids of North Jersey, Inc., et al., 338 N.J. Super 442, 446 (2001); Wurtzel v. Werres, 201 N.J. Super 544, 549 (App. Div. 1985); see also Bolle v. Community Memorial Hospital, 145 N.J. Super. 593, 596 (App. Div. 1976) ("Each case must rest on its own peculiar facts, and we do not and cannot now anticipate the vagaries of litigation concerning which [sic] an attorney may seek to establish a [reasonable] fee ....") In determining whether a fee is fair and reasonable, a court should be guided by R.P.C. 1.5 which identifies the factors to be considered in determining a reasonable fee.  These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and the ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent.

Two especially important factors courts consider in determining a reasonable fee are whether "the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming." See Wurtzel,

201 N.J. Super. at 549; Mitzel v. Washington Elec. Corp., 72 F.3d 414, 418 (3d Cir. 1995).

Mr. O'Rourke raises several arguments in support of his application, two of which are summarily rejected. First, Mr. O'Rourke argues that since Butterly's parents originally expected to pay the 33 1/3% contingent fee reflected in their Pennsylvania fee agreement, a 30% fee is necessarily reasonable.[4] The fact that Pennsylvania may permit a higher contingent fee than New Jersey is irrelevant to this Court's determination of what is an appropriate fee under applicable New Jersey Court Rules and case law. Therefore, the fee agreement Mr. O'Rourke signed in Pennsylvania will be ignored. The second argument this Court rejects is plaintiff's reliance on the fact that Butterly's parents and guardian executed affidavits approving a contingent fee of up to 33 1/3% on the full net recovery amount. Id. at ¶95. In King v. County of Gloucester, et al., 483 F. Supp.2d 396 (D.N.J. 2007), this Court addressed a similar motion for an increase in attorney's fees. In King, although the plaintiffs executed affidavits consenting to a higher contingent fee, this Court did not give the affidavits any significant consideration. Specifically, this Court wrote:

> The Court notes the two named plaintiffs submitted affidavits confirming that they agree with K and K's fee application. However, based upon relevant case law, the Court did not give any significant weight to

---

4. Plaintiff's original Motion stated, "Plaintiff's counsel is requesting a 30% fee on the net settlement amount rather than the 33 1/3% fee that plaintiff's parents expected." See Doc. No. 44 at ¶97.

6

>       the affidavits.  The Third Circuit has noted
>       the inherent and inevitable conflict that
>       exists when an attorney seeks a fee pursuant
>       to N.J.R. 1.21-7(f).  Mitzel, 72 F.3d at  419-
>       20; see also Burd, 195 N.J. Super. at 37 ("It
>       is virtually impossible for lay persons to
>       make informed judgments as to the
>       reasonableness of attorneys' contingent fees,
>       since they do not have the experience required
>       to make a comparative evaluation of the
>       factors involved in a particular case ....")
>       To be sure, however, it is clear that there is
>       no evidence of overreaching by counsel.  It is
>       just as clear that the named plaintiffs have
>       been fully and completely informed of their
>       rights.

Id. at 400.  The Court's reasoning in King is equally applicable to this case.  Pursuant to applicable Third Circuit precedent this Court gives no significant weight to the affidavits of Mr. and Mrs. Butterly and Mr. Kitchen consenting to Mr. O'Rourke's fee application.  Nevertheless, like in King, the Court believes it is clear that there is no evidence of overreaching by counsel and that all interested parties have been fully and completely informed of their rights.

As noted, a relevant factor for this Court to consider when determining an appropriate attorney's fee is the attorney time spent on the case.  Mr. O'Rourke's submissions are far from clear on this subject.  In his original submission (March 26, 2007), Mr. O'Rourke's per hour attorney fee claim totaled $208,500.[5]  After this Court referred Mr. O'Rourke to the Court's Opinion in King, supra, Mr. O'Rourke submitted a supplemental attorney's fee claim

---

5. Mr. O'Rourke claimed that he worked 600 hours at an average billing rate of $250.00 ($150,000), an associate billed 135 hours at a rate of $200.00 ($27,000), a second associate billed 150 hours at a rate of $200.00 ($30,000), and paralegals billed an additional 20 hours at an average rate of $50-75 per hour ($15,000).

7

(April 24, 2007) in which he claimed that the 600 hours attributable in his original Motion was "based on only that time of his which was documented." See Doc. No. 49 at ¶108. Mr. O'Rourke averred that:

> [b]ecause this was a plaintiff's contingent fee case (not paid by the hour) Mr. O'Rourke did not carefully document all time spent on the matter. Mr. O'Rourke estimates that he spent considerably more time on the case than his documented time. He believes the total time spent would more closely approximate 1000 hours. Additional time of 285 hours was documented by Associates for this case.

Id. In addition, Mr. O'Rourke averred that his fee of $250 per hour is what he charges private clients for his time and that his "average billing rate for plaintiff's cases is over $500/hr." Id. at ¶109. In Mr. O'Rourke's April 24, 2007 submission (Doc. No. 49), he asked for attorney's fees in the amount of $643,309.00, which is 30% of $2,144,363.33. Id. at ¶125.

The crux of Mr. O'Rourke's argument for why he is entitled to an increased fee is that this case presented unusually complex liability and damage issues. The Court rejects Mr. O'Rourke's argument that this was a complex liability case. What happened here is that an unsecured newspaper vending machine fell on a minor child who was playing on it. In the Court's view, it does not take extraordinary effort to prove liability in this context. While it may be true that the defendants claimed they did not have notice of any prior accidents, this Court believes it is likely a jury would have decided that it was foreseeable that minor children at a campground would play on an unsecured vending machine. It is commendable that Mr. O'Rourke was able to track

8

down literature from the manufacturer of the vending machine recommending that it be secured. However, the Court does not believe this discovery required extraordinary efforts and frankly the Court expects nothing less than diligent discovery from a skilled and experienced litigator such as Mr. O'Rourke.

Mr. O'Rourke's argument that he faced complex causation issues stands on a different footing. The Court credits Mr. Vesper's testimony that Mr. O'Rourke's tenacious and dogged efforts resulted in the production of expert reports that connected Butterly's ongoing cognitive problems and seizure activity to his campground accident. The Court acknowledges that early in the case Mr. O'Rourke was in a difficult position when Butterly's treating neurologist did not initially connect the 2001 accident to Butterly's present injuries. Further, this Court agrees that the production of plaintiff's updated expert report was the key factor that caused the defendants to increase their settlement offer to $2.2 million.

In the accompanying Order the Court determined that $55,758.28 in costs should be reimbursed out of the $2.2 million settlement. Therefore, Mr. O'Rourke's attorney fee should be calculated using the net recovery to Butterly of $2,138,723.40.

The Court believes there are three (3) possible starting points for its fee analysis from which it could make appropriate adjustments. First, the Court could simply apply the schedule set forth in N.J.R. 1:21-7(c). Under this schedule, the attorney fee is

$569,244.68 or 26.6%.[6]  The second scenario would be to apply a 25% fee since N.J.R. 1:21-7(c)(6) provides that this is the maximum fee that can be charged to a minor.  Under this scenario Mr. O'Rourke's fee is $534,680.85 ($2,138,723.40 x 25%).  The third scenario would be to apply the 30% fee Mr. O'Rourke requests.  Under this scenario the attorney fee is $641,617.02 ($2,138,723.40 x 30%).  The difference between the upper and lower ranges is $106,936.17.

Taking all relevant factors into account the Court decides not to award Mr. O'Rourke the requested 30% fee but to make an upward adjustment to the fee Mr. O'Rourke would ordinarily be entitled to under N.J.R. 1:21-7(c)(6).  The Court believes an attorney fee of $600,000 to Mr. O'Rourke is appropriate.  Not only is this an upward adjustment from the recommended fee under N.J.R. 1:21-7(c), but it is also a substantial adjustment above the 25% limit for a minor under N.J.R. 1:21-7(c)(6).  Given the hours Mr. O'Rourke's firm worked on the case, a $600,000 fee is a substantial multiplier of what he would have charged on an hourly basis.  (The Court prefers to rely upon the number of hours worked and billing rate referred to in Mr. O'Rourke's first submission.)  Also, the Court has discussed that it does not consider Mr. O'Rourke's efforts to prove liability to be extraordinary.  However, Mr. O'Rourke deserves an increased fee for the excellent work he did on the medical causation issues in the case and in obtaining a settlement of $2.2 million for the minor plaintiff.

---

6.  The Court calculated this fee at $541,500 + $27,744.68 (20% x $138,723.40).

This Court recognizes that in <u>King</u>, <u>supra</u>, it approved a 33 1/3% fee. However, <u>King</u> is distinguishable. First, that case did not involve a minor. Second, in <u>King</u> the Court's decision discussed the uphill hurdle plaintiff's counsel faced in proving liability. Third, in <u>King</u> the plaintiff's attorneys documented the significant time they spent on the case which was valued at more than the fee they were awarded. Lastly, the attorneys in <u>King</u> documented the business their small firm had to forego because of the significant time they spent prosecuting the case.

<u>Conclusion</u>

For all the foregoing reasons, it is hereby ORDERED this 22nd day of June, 2007, that Mr. O'Rourke is awarded attorney's fees in this matter in the total amount of $600,000 and that he should be reimbursed from the settlement amount $55,758.28 for the reasonable and necessary costs he incurred to prosecute this action. It is further ORDERED that these fees and costs shall be payable to Mr. O'Rourke after the settlement funds deposited into Mr. O'Rourke's trust account clear; and

IT IS FURTHER ORDERED that Mr. O'Rourke is solely responsible for paying the agreed upon attorney's fee to Mr. Vesper.

s/ Joel Schneider<br>
JOEL Schneider<br>
United States Magistrate Judge